# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-01-00402-CV
===============

**Dessie Maria Andrews and Dan Parkhurst, Appellants**

**v.**

**Timothy C. Smith, Independent Executor of the Estate of William F. Baska, Deceased, Appellee**

---

**FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT NO. 20,808 HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING**

---

Dessie Maria Andrews[1] and Dan Parkhurst appeal from a default judgment favoring Timothy C. Smith, the independent executor of the Estate of William F. Baska. Parkhurst has not filed a brief; he has thereby waived all complaints. *See* Tex. R. App. P. 38.8(a)(3). Andrews contends that the district court lacked jurisdiction, erred by finding that Andrews had a fiduciary duty to Smith, and erred by awarding property to Smith. We affirm the judgment.

## BACKGROUND

Baska died on March 25, 2001 at his home in Spicewood, Burnet County, Texas. In his will, Baska named Smith his sole heir and the independent executor of his estate.

---

[1] Andrews was also referred to by the middle name "Marie" at times in the district court. She was sued "individually and as purported trustee of an alleged LCS Trust" but, because her notice of appeal does not mention her capacity as trustee, this appeal is taken only in her individual capacity.

Baska's estate[2] sued Parkhurst and Andrews, individually and as purported trustee of the alleged LCS Trust, seeking recovery of money, property, and land that Smith alleged they had taken improperly before and after Baska's death. Smith alleged that Andrews, acting as Baska's financial advisor, breached a fiduciary duty to Baska by structuring bank accounts so that she could transfer funds from Baska's accounts into accounts she controlled as part of the LCS Trust, which Smith alleges to be a fiction. Smith further alleged that appellants converted the personal property of Baska by removing the property from his home after his death. Smith sought to set aside a deed transferring real estate from Baska to the LCS Trust; Smith alleged the deed should be set aside because the LCS Trust did not exist, Baska was not mentally competent when he signed the deed, the LCS Trust did not pay consideration for the deed, and the Trust obtained the deed in violation of Andrews's fiduciary duty as a financial consultant. Smith sought exemplary damages and attorney's fees, as well as a temporary injunction requiring the return of personal property and money and the non-interference with Smith's use of the real estate.

On May 10, 2001, after a hearing at which all parties appeared, the district court granted a temporary injunction. It restrained Andrews and Parkhurst from disposing, selling, or hiding any of the personal property listed in Smith's petition. It restrained them from transferring, disposing, conveying, or moving funds held in the name of LCS Trust which originated from Baska. It also restrained them from taking possession of, exercising control over, transferring, or conveying the real estate. The court ordered them to surrender Baska's personal property to Smith in his role

---

[2] The original petition stated that "Plaintiff is the Estate of William F. Baska, Deceased, represented herein by and through TIMOTHY C. SMITH, Independent Executor . . . ." Smith, acting as independent executor for the Estate, later replaced the Estate as named plaintiff.

as executor by May 11, 2001, and ordered Smith to preserve the property during the pendency of this suit. It also ordered Andrews to account, by May 24, 2001, for all of Baska's funds deposited in the accounts.

Alleging that Andrews did not comply with the order to turn over the personal property, Smith sought to enforce the injunction. After she failed to appear at the June 14, 2001 hearing, the district court on June 21, 2001 signed an order of attachment of her person for a hearing on July 2, 2001 regarding contempt charges. On June 29, 2001, however, Andrews filed a notice of interlocutory appeal from the June 21 order of attachment.

While her interlocutory appeal of the order of attachment was pending, the district court proceeded to consider the merits of the underlying cause. The judgment recites that both Andrews and Parkhurst were duly and properly notified of the trial, but neither appeared. The district court rendered a default judgment in favor of Smith. The court found the following:

- that the LCS Trust was null and void and did not exist by law;

- that Andrews was in a fiduciary relationship with Baska and that she committed constructive fraud by breaching that relationship;

- that Andrews and Parkhurst converted personal property belonging to Baska;

- that any property held in the name of the LCS Trust that originally belonged to Baska was actually subject to the legal control of Smith, as executor of Baska's estate;

- that a power of attorney from Baska held by Andrews was void; and

- that any documents by which Andrews purported to use that power to convey Baska's property were void.

3

The court accordingly set aside the deed transferring real estate from Baska to the LCS Trust and declared a list of personal property (that the court had previously ordered Andrews and Parkhurst to surrender to Smith as independent executor) belonged to the Estate. The court ordered Andrews to pay $47,332.44 to Smith as independent executor. It awarded Smith, as independent executor, $8400 in attorney's fees owed jointly by Andrews and Parkhurst, with additional fees for appeals. The court awarded Smith, as independent executor, $200,000 from Andrews and $10,000 from Parkhurst in exemplary damages. The judgment also contained various provisions for its enforcement.

Andrews and Parkhurst then filed notices of appeal from the final judgment.

### DISCUSSION AND CONCLUSIONS

Generally, a motion for new trial is a prerequisite to challenging a post-answer default judgment. *See* Tex. R. Civ. P. 324(b)(1). In that motion, the defendant must show (1) that her failure to appear at trial was not intentional, or the result of conscious indifference on her part, but was due to a mistake or accident; (2) that she has a meritorious defense; and (3) that the granting of her motion will occasion no delay or otherwise work an injury to the plaintiff. *American Paging of Tex., Inc. v. El Paso Paging, Inc.*, 9 S.W.3d 237, 240 (Tex. App.—El Paso 1999, no pet.); *see also Cliff v. Huggins*, 724 S.W.2d 778, 778 (Tex. 1987); *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). The clerk's record in this case does not contain a motion for new trial directed at the default judgment. The reporter's record from the trial does contain a signed receipt of certified mail containing notice informing Andrews of the trial setting. Andrews does not attempt to prove that her failure to appear at the trial setting was due to mistake or accident.

Andrews instead challenges the jurisdiction of the district court. Such fundamental errors can be raised for the first time on appeal. *See Central Educ. Agency v. Burke*, 711 S.W.2d 7,

4

8 (Tex. 1986). Andrews contends that Smith's claims were incident to an estate and that accordingly the probate court, not the district court, had jurisdiction over the Estate's claims.

But for the involvement of the Estate, the district court undisputedly would have jurisdiction and would be the proper court for this action. "District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. 5, § 8. The Texas Constitution confers exclusive jurisdiction on justice courts for suits in which the amount in controversy is $200 or less. *See* Tex. Const. art. 5, § 19. This leaves the district courts with jurisdiction over suits in which the amount in controversy is more than $200. *See Arteaga v. Jackson*, 994 S.W.2d 342, 342 (Tex. App.—Texarkana 1999, pet. denied). The district court clearly had subject matter jurisdiction over the suit. The question is whether the filing of the will for probate in the county court made the county court the exclusive forum for all actions related to the probate of the will.

The Legislature has conferred on county courts the general jurisdiction of a probate court. Tex. Prob. Code Ann. § 4 (West Supp. 2002). The county court "shall . . . transact all business appertaining to estates subject to administration, including the settlement, partition, and distribution of such estates." *Id.* In county courts, "appertaining to estates" includes "all claims by or against an estate." *Id.* § 5A(a). In counties such as Burnet in which there is no statutory court exercising probate jurisdiction, "all applications, petitions, and motions regarding probate and administrations shall be filed and heard in the county court," except when the county court elects to transfer contested proceedings to a district court. *See id.* § 5(b). Testators appointing independent

5

executors may do as Baska did and direct that no action be had in county court in relation to the settlement of the estate other than the probating and recording of the will and the return of a statutory inventory, appraisement, and list of claims of the estate. *See id.* § 145(b). That section goes on to provide that, when an independent executor has been appointed, "further action of any nature shall not be had in the county court except where this Code specifically and explicitly provides for some action in the county court." *Id.* § 145(h).

We have interpreted the Code to mean that the district and county courts have concurrent jurisdiction, with the county court having dominant jurisdiction. *See Green v. Watson*, 860 S.W.2d 238, 242-43 (Tex. App.—Austin 1993, no pet.) (considering statutory county and probate courts). *But see Estate of Torrance v. State*, 812 S.W.2d 393, 396 (Tex. App.—El Paso 1991, no writ) (no concurrent jurisdiction between district and county courts for matters dealing with probate). When faced with similar assertions that the district court lacked jurisdiction to adjudicate a dispute because of the pendency of a probate proceeding in a constitutional county court, the Corpus Christi court held that the district court had jurisdiction. *See Carroll v. Carroll*, 893 S.W.2d 62, 66 (Tex. App.—Corpus Christi 1994, no pet.) (original suit regarding land title appropriately filed in district court); *Cf. Herbst v. Sheppard*, 995 S.W.2d 310, 313-14 (Tex. App.—Corpus Christi 1999, pet. denied) (suit regarding claim against estate tried in district court after transfer from county court not barred by Probate Code section 145).

Because this suit was filed in the district court and pertained to the estate being independently administered in the county court, the county court had dominant jurisdiction. The district court also had jurisdiction, but might have had to defer to the county court's dominant

jurisdiction had a plea in abatement asserting such been filed in this suit.[3] *See Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974). Under the doctrine of dominant jurisdiction, "[a]ny subsequent suit involving the same parties and the same controversy must be dismissed *if a party to that suit calls the second court's attention to the pendency of the prior suit by a plea in abatement.*" *Id.* (emphasis added). There is no plea in abatement in the clerk's record. Even assuming that the county court had dominant jurisdiction over this suit, the district court did not err by exercising its jurisdiction because Andrews never invoked the county court's dominant jurisdiction by filing a plea in abatement.

Andrews also argues that the court never obtained power over the property because it was owned by the LCS Trust, which was not a party to this suit. As discussed above, the district court had subject-matter jurisdiction. Venue was proper in Burnet County based on the location alleged for the real estate, the conversion, and the breach of fiduciary duty. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 15.002(a)(1) ("lawsuits shall be brought: (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred") & 15.011 ("Actions for recovery of real property or an estate or interest in real property . . . to remove encumbrances from the title to real property . . . shall be brought in the county in which all or a part of the property is located.") (West Supp. 2002). The removal of the personal property from Burnet County pursuant to the alleged wrongdoing did not invalidate venue in Burnet County. The district court in Burnet County had jurisdiction and was the proper venue. Contrary to Andrews's contention, the district court accordingly had jurisdiction to issue a temporary restraining order.

---

[3] This is true, even though the county court could have transferred the proceeding back to the district court under Probate Code section 5(b) and might have had to transfer it under Probate Code section 145(b) in order for the case to come to trial.

7

Andrews argues that the substitution of Smith for the Estate in the style of the case dismissed the Estate. An estate, however, cannot sue or be sued except through its representative. *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975). Smith participated from the outset of the case in his capacity as executor of the Estate, validating the inception and conduct of the suit by the Estate; the restyling of the case merely adopted the proper style. *See Dueitt v. Dueitt*, 802 S.W.2d 859, 861 (Tex. App.—Houston [1st Dist.] 1991, no pet.). The replacement of the Estate as a party by Smith in his representative capacity in the style of the case did not, as Andrews contends, negate the cause of action.

Andrews argues that Smith lacked standing to make claims on Baska's behalf. Smith was not making claims as an individual, but as the representative of Baska's estate. As personal representative of the estate,[4] Smith was required to "use ordinary diligence to collect all claims and debts due the estate and to recover possession of all property of the estate to which its owners have claim or title." Tex. Prob. Code Ann. § 233(a) (West Supp. 2002). The Code also provides that "[s]uits for the recovery of personal property, debts, or damages and suits for title or possession of lands or for any right attached to or growing out of the same or for injury or damage done thereto may be instituted by executors or administrators appointed in this state . . . ." *Id.* § 233A. Smith not only had standing to make claims on behalf of Baska's estate, his role as independent executor required that he do so under the circumstances he perceived.

Smith's role as independent executor defeats Andrews's claim that she could not be liable to him because she had no fiduciary duty toward him. Smith does not claim that Andrews owed

---

[4] The definition of personal representative includes independent executor. *See* Tex. Prob. Code Ann. § 3(aa) (West Supp. 2002).

8

him a duty. He claims on behalf of Baska's estate that Andrews breached a fiduciary duty owed to Baska, and thereby deprived Baska (and accordingly the estate) of property. Andrews's claim that she owes a fiduciary duty only to the beneficiary of the estate may be true within her role as trustee; that does not prevent her from also having had a fiduciary responsibility to Baska as his financial advisor.

Andrews questions whether the affidavit presented to the court supported a temporary restraining order ("TRO"). This challenge is moot because the temporary restraining order is no longer in effect. *See Hermann Hosp. v. Tran*, 730 S.W.2d 56, 57 (Tex. App.—Houston [14th Dist.] 1987, no writ) (TRO expired by its own terms rendered moot). The district court signed the TRO on April 25, 2001. The TRO was set to expire upon further order of the court or operation of law; such orders last only fourteen days unless the court extends the time. *See* Tex. R. Civ. P. 680. The court did not extend the time. Rather, the court held a hearing and, on May 10, 2001, signed a temporary injunction. That injunction continued in effect until further order of the court. On August 6, 2001, the court held a trial and, on September 28, 2001, the court signed the final judgment. The temporary injunction accordingly is moot. Andrews does not assert that any harm from the temporary restraining order persists; she never complied with it or the temporary injunction. Because subsequent orders, supported by evidence, supplanted the TRO, Andrews's complaint about the evidentiary support for the TRO is moot.

Andrews also asks whether the LCS Trust has claim over the property superior to Smith's claim. To prove conversion, a plaintiff must prove that

> (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent

9

with the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

*Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, writ denied). The conversion cause of action affects only the personal property, including a truck, several firearms, a computer, and possibly other items; it does not pertain to the funds, which are covered by the breach of fiduciary duty claim, or the claim that the deed to the real property should be set aside. Smith alleged that, after Baska's death, Andrews and Parkhurst went to Baska's house and removed the listed property. Andrews testified and presented a document at the hearing on the temporary injunction purporting to show that Baska sold all personal property to the LCS Trust for $100. Smith testified that he believed that the signature on the document was forged. By failing to respond to requests for admission, Andrews is deemed to have admitted that she forged the signature. *See* Tex. R. Civ. P. 198.2(c). She is also deemed to have admitted that Baska owned the property until his death and that Smith was entitled to inherit it. After Baska's death, then, the property belonged to his estate. The evidence supports the court's conclusion that Andrews converted the Estate's property. As discussed above, Smith, as independent executor, was entitled and required to attempt to recover this property. Based on the judgment, the Estate's right to possess the personal property is superior to that of the LCS Trust.

Andrews also questions whether the judgment on the conversion cause of action enriched Smith. She argues that a court cannot award judgment both for property and for the value of the property. The judgment in this case does not do that. The money judgment for $47,332.44 relates to funds transferred in bank accounts. The money judgment is not compensation for the personal property that the court ordered Andrews to return to the Estate. Smith's claim that the

10

funds and the property taken by Andrews belong to the Estate was unrebutted because Andrews chose not to appear at the trial to rebut his evidence. The court has not awarded a double recovery for the property. Although the judgment may eventually increase Smith's wealth, it does not enrich him unjustly under the evidence presented.

Andrews argues in the concluding paragraph of her brief that Baska deeded property to the LCS Trust beginning in 1997 based on an agreement negotiated by Smith's attorney. She contends that Baska disinherited Smith after Smith denied Baska access to a truck Baska had assigned to him. These contentions are not supported by the record.

Because Andrews failed to appear at the trial, the only evidence in the record supports the judgment regarding the property of the Estate. We resolve all issues in favor of the judgment.

We affirm the judgment.

_____

Jan P. Patterson, Justice

Before Justice Kidd, Yeakel and Patterson

Affirmed

Filed:   March 28, 2002

Do Not Publish

11